IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | § |
| | § |
| v. | §     EP-21-CR-1246-DB-1 |
| | § |
| **KIM DUNG THI LEE** | § |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Kim Dung Thi Lee's ("Ms. Lee") "Motion to Suppress" ("Motion"), filed in the above-captioned case on October 1, 2021, ECF No. 20. On October 10, 2021, the United States of America ("the Government") filed a Response, ECF No. 24, and Ms. Lee issued a Reply, ECF No. 25. After due consideration, the Court is of the opinion that Ms. Lee's Motion should be denied.

## BACKGROUND

On a June night Border Patrol Agent (BPA) Pedro Gutierrez ("Agent Gutierrez") stopped a white Dodge Journey SUV and found nine people inside. Resp. 1–2, ECF No. 24; Crim. Compl. 2, ECF No. 2.

Earlier that evening, an off-duty BPA had observed the SUV at a "known stash house used for smuggling undocumented noncitizens (UNCs)," where a person boarded it. Crim. Compl. 2, ECF No. 2. Later at a nearby gas station, the agent observed the same SUV and "noticed that [its] rear suspension was heavily laden." *Id.* He followed the vehicle until it entered I-10 heading east, and he sent photographs and information about the vehicle including its license plate number to "other federal immigration law enforcement agents." *Id.* A Customs

and Border Intel Agent then disseminated this information to on-duty BPAs, including Agent Gutierrez. *Id.*; Resp. 2, ECF No. 24.

About forty-five minutes after receiving the off-duty BPA's report of the vehicle, Agent Gutierrez observed the vehicle on the freeway heading towards an immigration checkpoint that was closed and not requiring inspections. Resp. 2, ECF No. 24; Crim. Compl. 2, ECF No. 2.

Prior to stopping the vehicle, Agent Gutierrez observed it to be "riding low." *See* Resp. 2, ECF No. 24; Mot. 1, ECF No. 20. He ran the vehicle's license plate number and matched it to the license plate number the off-duty BPA had reported. Crim. Compl. 2, ECF No. 2. He also determined that the vehicle was a rental. *Id.*

As Agent Gutierrez approached the vehicle, he "noticed seven passengers hunched over in the rear of the vehicle." Resp. 2, ECF No. 24. He questioned the driver and passengers, and Ms. Lee, sitting in the front passenger seat, repeatedly interjected to answer for them all. *Id.* Agent Gutierrez then questioned the passengers in Spanish, and they admitted to not being United States citizens and to not possessing any immigration documents. *Id.* All occupants of the vehicle, including Ms. Lee, were taken to the border patrol station at Fort Hancock and detained overnight. Crim. Compl. 2, ECF No. 2.

The following morning, Homeland Security Investigations (HSI) Special Agent Patrik Pinion ("Special Agent Pinion") interviewed Ms. Lee. Resp. 3, ECF No. 24. Special Agent Pinion provided Ms. Lee with a written copy of the *Miranda* warnings, "which she signed," and Ms. Lee "indicated she was willing to speak without the presence of an attorney." Crim. Compl. 3, ECF No. 2. Ms. Lee then stated "she was aware she had UNCs in her vehicle," "was attempting to transport them to Dallas," and had $5,000 in her possession that "was a

payment she recently received for previously smuggling UNCs." *Id.* Further, Ms. Lee "stated that she was fully responsible for this smuggling scheme." *Id.*

Ms. Lee now moves to suppress "all evidence gained pursuant to the illegal stop and detention" and requests an evidentiary hearing on the motion "[s]ince the analysis in this case is very fact-specific." Mot. 3, ECF No. 20. For the following reasons, the Court will deny Ms. Lee's request for an evidentiary hearing and her Motion to Suppress.

## LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" conducted by the Government. U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment must be suppressed and cannot be used at trial. *See Mapp v. Ohio*, 367 U.S. 643, 657 (1961) (explaining that the exclusionary rule requires "that no man . . . be convicted on unconstitutional evidence"); *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) ("Evidence obtained [in] violation of the Fourth Amendment will be suppressed and excluded from consideration.").

A defendant who seeks to suppress illegally obtained evidence must do so before trial. Fed. R. Crim. P. 12(b)(3)(C). Normally, the defendant bears the burden of proving by a preponderance of the evidence that the evidence in question was obtained in violation of his rights. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). However, when law enforcement acts without a warrant, "the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (quoting *United States v. Castro*, 166 F.3d 728, 73 n. 7 (5th Cir. 1999)).

3

Further, "an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (1983). "Evidentiary hearings are not granted as a matter of course." *United States v. Dean*, 100 F. 3d 19, 21 (5th Cir. 1996). They are required only if (1) there are disputed material facts and (2) those facts are "necessary to the decision of the motion." *Id.* If the defense alleges that there are disputed facts, its "motion must be 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *Id.* (quoting *Harrelson*, 705 F.2d at 737).

## ANALYSIS

As a preliminary matter, the Court first determines that stopping the car constituted a seizure under the Fourth Amendment. It then evaluates Ms. Lee's request for an evidentiary hearing. The Court will deny the request because there is no dispute of material fact affecting the Court's decision on the motion. Finally, it turns to the merits of the Motion to Suppress. It will deny the Motion because the Court finds the investigatory stop was lawfully based on established reasonable suspicion.

1. **Stopping Ms. Lee's Vehicle Constituted a Fourth Amendment Seizure.**

Ms. Lee is not entitled to the protections of the Fourth Amendment unless she was subject to a "search" or "seizure" within the meaning of that Amendment. U.S. Const. amend. IV. The Court determines that Agent Gutierrez's stop of Ms. Lee's SUV did in fact constitute a seizure. "[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also United States v. Laija-Garcia*, 347 F. Supp. 2d 350, 355 (W.D. Tex. 2004), *aff'd*, 110 F.

4

App'x 411 (5th Cir. 2004). Additionally, "the Fourth Amendment . . . and its protections extend to . . . stops by U.S. Border Patrol agents." *United States v. Freeman*, 914 F.3d 337, 342 (5th Cir. 2019) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted).

Thus, the stop was a seizure within the meaning of the Fourth Amendment and must be justified by reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975).

### 2. Ms. Lee is Not Entitled to an Evidentiary Hearing.

Ms. Lee is not entitled to an evidentiary hearing because Ms. Lee's Motion does not present disputed facts that are material to the motion. *See* Mot. 1, ECF No. 20; *see also Dean*, 100 F. 3d at 21.

The parties do not dispute that a person was seen boarding the SUV at a known stash house for undocumented aliens or that the vehicle was headed toward a checkpoint that was not conducting immigration inspections. *See* Resp. 2, ECF No. 24; Reply 1–2, ECF No. 25

There is some dispute about whether the vehicle was "riding low." Ms. Lee asserts that the off-duty BPA's photograph "shows that there was nothing unusual in the appearance of the vehicle" and suggests that, contrary to the assertions of the Government, the vehicle was not riding low. Reply 3, ECF No. 25; *see Dean*, 100 F. 3d at 21.

Whether a vehicle is riding low is only one of several factors the Court considers. *See Brignoni-Ponce*, 422 U.S. at 884 ("Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area."). Thus, an evidentiary hearing held simply to resolve the issue would little effect on the Court's determination of the merits of the Motion to Suppress.

Additionally, the picture provided by Ms. Lee does not clearly depict whether the vehicle was or was not riding low due to the angle from which it was taken and the lack of any other vehicles nearby for comparison. *See* Reply 4, ECF No. 15. Ms. Lee's assertion that the picture of the vehicle does not show an unusual appearance also does not account for the BPAs' experience and specialized training in determining when a vehicle is riding low. *See Arvizu*, 534 U.S. at 273. Therefore, Ms. Lee's assertions and the picture are not "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Dean*, 100 F. 3d at 21.

Thus, the Court will deny Ms. Lee's request for an evidentiary hearing and will evaluate the question of reasonable suspicion as a matter of law.

### 3. The Court Will Deny Ms. Lee's Motion to Suppress Because Agent Gutierrez had the Reasonable Suspicion Required to Make the Investigatory Stop.

The Government has articulated a sufficient factual basis to establish that Agent Gutierrez had the reasonable suspicion required to conduct the investigatory stop of Ms. Lee's vehicle. In *Terry v. Ohio*, the Supreme Court found that in certain circumstances, police could conduct a search even without probable cause where "limited searches and seizures . . . were a valid method of protecting the public and preventing crime." *Brignoni-Ponce*, 422 U.S. at 881 (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)). The court extended this logic to certain types of immigration stops due to the "large government interest . . . minimal intrusion . . . and absence of practical alternatives for policing the border." *Brignoni-Ponce*, 422 U.S. at 881. The court has held that when an officer reasonably suspects "that a particular vehicle may contain aliens who are illegally in the country" he may briefly stop the car. *Brignoni-Ponce*, 422 U.S. at 881. Suspicion is reasonable when an officer can "point to specific and articulable facts which, taken

6

together with rational inferences from those facts," suggest that "criminal activity may be afoot." *Terry*, 392 U.S. at 21, 30.

In deciding whether reasonable suspicion exists, a court "must look at the totality of the circumstances of [the] case" to see whether officers had "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted). "Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area." *Brignoni-Ponce*, 422 U.S. at 884. These factors include "proximity to the border, the usual patterns of traffic . . . previous experience with alien traffic . . . information about recent illegal border crossings . . . and aspects of the vehicle itself." *Id.* at 885–86; *see also Arvizu*, 534 U.S. at 273 ("This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.").

Agent Gutierrez reasonably suspected, based on the totality of the circumstances, that Ms. Lee was involved in alien smuggling. Agent Gutierrez's reasonable suspicion is justified by both the "collective knowledge" doctrine and his own observations, which corroborated and supplemented the off-duty BPA's information. Resp. 2, ECF No. 24; Crim. Compl. 2, ECF No. 2; *see also Ibarra-Sanchez*, 199 F.3d at 759.

### A. Agent Gutierrez's stop is justified by the "collective knowledge doctrine."

Ms. Lee asserts that the officers who conducted the stop "relied entirely on the information from the off-duty officer" and that that information "was simply not enough to establish reasonable suspicion." Mot. 3, ECF No. 20. Ms. Lee also claims that "[n]one of the *Brignoni-Ponce* factors as applied in this case weigh in favor of a finding of reasonable suspicion." *Id.* The Court disagrees.

The information disseminated through Border Patrol's intel system can establish reasonable suspicion justifying Agent Gutierrez's stop of the vehicle in which Ms. Lee was riding. "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop...." *United States v. Ibarra-Sanchez,* 199 F.3d 753, 759 (5th Cir. 1999) (quoting *United States v. Hensley,* 469 U.S. 221, 681–82 (1985)). That principle is often referred to as the "collective knowledge doctrine." *Id.*; *see also United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.1976).

The collective knowledge doctrine applies as long as there is "'some degree of communication' between the acting officer and the officer who ha[d] knowledge of the necessary facts." *Bass,* 996 F.3d at 737; *see also Ibarra-Sanchez,* 199 F.3d at 759. As *Bass* and *Ibarra-Sanchez* indicate, the communication need not be direct to transfer reasonable suspicion. *See also McPherson,* 630 F. App'x. at 332. Rather, the information can be called in to a central station and further disseminated to on-duty officers. *See Bass,* 996 F.3d at 737; *Ibarra-Sanchez,* 199 F.3d at 756–57. In Ms. Lee's case, Agent Gutierrez received information through a border patrol intel agent who dispatched the information. Crim. Compl. 2, ECF No. 2. Thus, the collective knowledge doctrine is applicable.

Ms. Lee also asserts that the off-duty BPA himself did not have enough information not create a reasonable suspicion, and thus that the stop cannot be justified by that information. The Court finds that off-duty BPA did have enough information to create a reasonable suspicion. He observed a person get into Ms. Lee's vehicle at a known stash house. Crim. Compl. 2, ECF No. 2; Resp. 2, ECF No. 24. He then left the area of the stash house and proceeded to a nearby gas station, where he saw the same vehicle arrive with a "heavily laden"

rear suspension, visible to the BPA's trained eye. Crim. Compl. 2, ECF No. 2; *see also Brignoni-Ponce*, 422 U.S. at 885 (stating that whether a vehicle "appear[s] to be heavily loaded" may be a factor supporting reasonable suspicion). The off-duty BPA also followed the vehicle until it entered I-10 heading eastbound towards a closed Border Patrol Checkpoint. Crim. Compl. 2, ECF No. 2; Resp. 2, ECF No. 24. In sum, the vehicle (1) departed from a known stash house, (2) appeared to be riding low, and (3) began heading eastbound toward a checkpoint that was clearly closed.

Arguably each of these behaviors is consistent with lawful behavior. Yet seemingly innocent conduct can still form the basis for reasonable suspicion. *United States v. Gomez*, 776 F.2d 542, 548 (5th Cir. 1985). Moreover, any of these behaviors would not create reasonable suspicion in isolation. However, the totality of the circumstances, along with the fact that the observations were made by a trained law enforcement officer, supports a finding of reasonable suspicion. *See* Crim. Compl. 2, ECF No. 2; *Arvizu*, 534 U.S. at 273; *Brignoni-Ponce*, 422 U.S. at 886.

Thus, the facts observed by the off-duty BPA were sufficient to create reasonable suspicion. Under the "collective knowledge doctrine," Officer Gutierrez could stop the car based on those facts.

### B. Agent Gutierrez's independently corroborated observations provided reasonable suspicion to stop Ms. Lee's vehicle.

Agent Gutierrez's own observations create an independent basis for reasonable suspicion justifying the investigatory stop of Ms. Lee's vehicle. Agent Gutierrez himself observed "the vehicle's suspension riding low." Resp. 2, ECF No. 24; *see also* Crim. Compl. 2, ECF No. 2. Agent Gutierrez also ran the vehicle's license plate number prior to the stop, matching it to the license plate number the off-duty BPA reported and determining that the

vehicle was a rental. Resp. 2, ECF No. 24; *see also* Crim. Compl. 2, ECF No. 2. The fact that the vehicle was a rental with three rows of seating and ample cargo space, when combined with the BPA's experiences and observations of the vehicle riding low, provides a foundation for reasonable suspicion independent of the actions of the off-duty BPA. *See Brignoni-Ponce*, 422 U.S. at 885 ("For instance, officers say that certain station wagons, with large compartments for folding down seats or spare tires, are frequently used for transporting concealed aliens.").

Additionally, Agent Gutierrez conducted the stop about forty-five minutes after and approximately fifty miles away from when and where the off-duty BPA made the initial report. *Id.*; Mot. 1, ECF No. 20. Agent Gutierrez stopped Ms. Lee's vehicle only eleven miles away from the closed checkpoint. Resp. 2, ECF No. 24. Considering the characteristics of the vehicle, the area, the distance the vehicle had traveled, and the time of night, the totality of the circumstances weighs in favor of finding reasonable suspicion. *See Arvizu*, 534 U.S. at 273; *Brignoni-Ponce*, 422 U.S. at 884 ("Any number of factors may be taken into account in deciding whether there is reasonable suspicion . . . these factors include "proximity to the border, the usual patterns of traffic . . . .").

Ms. Lee argues that "proximity to the border" and "the usual patterns of traffic" do not weigh in favor of reasonable suspicion because "[n]othing about the way [Ms. Lee's] vehicle traveled on Interstate 10 was different than the thousands of other vehicles traveling along the interstate." Reply 2, ECF No. 25. However, as stated above, "simply because certain conduct may be construed as consistent with innocent behavior does not mean that this conduct may not form the basis for reasonable suspicion." *Gomez*, 776 F.2d at 548. Ms. Lee fails to note that numerous factors gave rise to reasonable suspicion: that the vehicle departed from a known stash house, that it appeared to be riding low, that it was stopped approximately fifty miles away

from its starting point near an overtly closed checkpoint, and that it was a rental car made for transporting people and cargo.

Ms. Lee writes of multiple factors in isolation, arguing that each in isolation cannot create reasonable suspicion. *See* Reply 2-3, ECF No. 25; Mot. 3, ECF No.20. However, the Court "must look at the totality of the circumstances of [the] case" to determine if reasonable suspicion exists. *Arvizu*, 534 U.S. at 273. Thus, based on the totality of the circumstances, the Court concludes that Agent Gutierrez reasonably suspected Ms. Lee of alien smuggling.

## CONCLUSION

Ms. Lee requests an evidentiary hearing on her Motion to Suppress all evidence obtained pursuant to Agent Gutierrez's stop. The Court found that Agent Gutierrez's stop was a seizure under the Fourth Amendment. However, Ms. Lee's Motion does not present disputed facts that are material to the motion, so she is not entitled to a hearing. Further, Ms. Lee has failed to provide a sufficient basis for the Court to find that the stop violated her Fourth Amendment rights. Therefore, Agent Gutierrez's stop was constitutional and her motion to suppress will be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Kim Dung Thi Lee's request for an evidentiary hearing on her Motion to Suppress is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Kim Dung Thi Lee's "Motion to Suppress" is **DENIED**.

SIGNED this 23rd day of **November 2021**.

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE